JAMES B. McFARLAND AND OTHERS v. JOHN WOFFORD.

See this case as to proof of partnership by parol admissions.

The language of the Court, in its charge to the jury, on the certainty required in the evidence to prove facts, is perhaps objectionable, dealing too often in superlatives; but, taken altogether, is believed to be sufficiently qualified, to avoid misleading the jury; nor is it believed from a reference to the facts, that they were misled.

See this case as to charging the jury on the weight of evidence.

Error from Fannin. Tried before the Hon. William S. Todd.

Wofford denied under oath the existence of the partnership alleged in the petition, and the execution of the note by him or by his authority. The evidence was as follows: Plaintiff first called Calvin Witty, who stated on oath that he was well acquainted with the defendants; that in the spring of 1853 he had several conversations with the defendant Wofford; that Wofford told him that he had entered or was about to enter into arrangements with the defendant Hamill to sell goods at Lowell's Bluff, in Fannin County; that Hamill was to go to the North to purchase the goods, and that he, Wofford, was to go on to Alabama, whence he was to send Hamill money; that he, witness, went to the Wichitaw mountains soon after, and returned to Fannin County early in October,

1853 ; that on his return Wofford had returned also from Alabama, and that he, Wofford, told witness again, that he was a partner of Hamill and that Hamill was then at the North buying goods.

Cross-examined : Thinks Wofford first told him he was a partner in June or July ; is not friendly with Wofford ; wishes him as far from him as possible ; thinks he could do Wofford justice ; after Hamill's return, knows that Walter Davis was with Hamill as a partner ; saw Hamill, Wofford and Davis all handling the goods. Lowell's Bluff is known as Elizabeth.

Plaintiffs then called John Wofford, Jr., who being sworn, stated that he was the son of the defendant Wofford ; knew his handwriting ; the letter shown to him, he believed was written by defendant Wofford.

July 12th, 1853.

Mr. A. HAMILL :

*Dear Sir :* I shant be able to meet you in Philadelphia, as I anticipated when I left you in Texas. Mr. Nelson, which collected my funds hear, has transferred them to the house of S. O. Nelson & Co., of New Orleans, without my approbation. I have know doubt but he thought it was best to do so. He is abstance at this time. He left here before I arrived, for New York. Lay out your funds there for such goods as you may think proper, any fancy goods, or such goods as you mention when I left you. Let me know by letter where you will meet me in New Orleans. My address will be in Texas.— Perhaps something may occur with me. No more at present. You had better direct one to Athens, Ala., and the other to the former. My health is good at present.

Yours truly,          JOHN WOFFORD.

Cross-examined : Heard a conversation between Hamill and his father on the 21st May, 1853 ; Hamill was trying to form a partnership with his father, but he, defendant Wofford did not agree to it—saying if he went into a partnership at all, it must be to do a cash business on a cash capital ; knows that

there was no partnership up to that day ; Wofford left for Alabama the next day, to wit : the 22nd May, 1853.

Plaintiffs then introduced Joseph Blackwell, who being sworn, testified that in 1853 Wofford told him he was a partner of Hamill ; saw them driving cattle from the nation together. (Here the statement of facts continued as follows : It now being apparent to the Court, that the witness was intoxicated, he was not permitted to proceed and his testimony ruled out.)

Plaintiffs then read the note sued on, and closed.

Defendant Wofford then proved the execution of a partnership contract, dated — May, 1854, between Hamill and defendant Wofford to do a mercantile business in the Choctaw nation, and read the same to the jury.

Defendant then recalled John Wofford, Jr., who stated that in the conversation between Wofford and Hamill, on the 21st May, 1853, Wofford said he was going to Alabama for some money, and thence to Virginia to buy negroes, and that he might go to Philadelphia if negroes were high.

The Court charged the jury as follows : Partnerships are understood to be the association of two or more persons for the transaction of business, having a mutual interest in the capital and a mutual interest in the profits. This not only constitutes a partnership as between the parties themselves, but in their relation to all others. When this is the case, they are equally bound by the firm name and the firm transactions, whether done by the firm or by one or another of the firm.

Partnerships may exist when there is a mutual interest in the profits, and not in the stock, and, *vice versa*, in the stock and not in the profits. When this is the case, a sufficient rule of evidence is required to bind the partner who does not appear before the public as a partner.

In this case the jury have to determine from the evidence how far, if at all, the defendant Wofford is bound by the acts of the defendant Hamill, under the firm name and style of A.

M. Hamill. In weighing the evidence in this case, the jury must be very guarded in receiving the parol admissions of Wofford, because of the uncertainty which the law books say attaches to all parol evidence, growing out of the imperfection of human memory and human nature too.

The note sued on furnishes in its phraseology presumptive evidence at least, that the partnership, attempted to be set up, did not exist, and that there was no intention to bind any other person than A. M. Hamill, the signer of the note ; because it says " the subscriber promises to pay." It is true that a partnership may exist between two or more, and the business may be carried on in the name of one, or in any other name ; but this must be by agreement of the parties ; and in order to make one not known in the firm liable, it must be shown by conclusive proof, either that he received a portion of the profits, or that he consented to be held liable under the firm name agreed upon.

It has not been attempted to show, in this instance, that the responsibility of Wofford was held up as an inducement to the plaintiff to credit Hamill, or that they knew of the existence of any partnership ; nor, indeed, is this essential. The note binds the subscriber only, and thereby raises the presumption that Hamill only intended to be bound. In order to render Wofford liable, the jury must have undoubted evidence that he was actually a partner at the time that the debt was contracted, and that he assented to be bound by the acts of A. M. Hamill. The acts and declarations of Hamill cannot establish the fact, unless Wofford assented, either expressly or by his acts.

If the jury believe from the evidence that Wofford was actually a partner of Hamill, and authorized him to sign his name and bind his estate under the firm name of A. M. Hamill, then you will find a verdict for the plaintiffs as partners ; but if you are not satisfied of this fact, you will find for the defendant, so far as Wofford is concerned, and for the plaintiffs against Hamill, who makes no defence.

Verdict and judgment for defendant Wofford and against defendant Hamill. Motion for new trial overruled. The grounds of the motion for new trial were, that the verdict was contrary to law and the evidence ; that the Court erred in the charge to the jury ; and

Fourth : Because the Court erred in the following charge to the jury, to wit : " In weighing the evidence in this case, the " jury must be very guarded in receiving the parol admissions " of Wofford, because of the uncertainty which the law books " say attaches to *all* parol evidence." Further : " In order to " make one not known in the firm liable, it must be shown by " *conclusive* proof, either that he received a portion of the pro- " fits or that he consented to be held liable under the firm " name agreed upon." And further : " In order to render " Wofford liable, the jury must have *undoubted* evidence, that " he was actually a partner at the time the debt was contract- " ed, and that he assented to be bound by the acts of A. M. " Hamill." And further : " That if the jury believe from the " evidence, that Wofford was actually a partner of Hamill and " authorized him to sign his name and bind his estate under " the firm name of A. M. Hamill, then you will find a verdict " for the plaintiff against them as partners ; but if you are not " satisfied of this fact, you will find for the defendant, so far as " Wofford is concerned."

Fifth : Because plaintiff could have proved the same facts by Blackwell, a witness, as those proved by Witty, of which, from Blackwell's inebriety, the plaintiffs were deprived, and for no fault of plaintiffs.

It did not appear that either party asked any instructions.

*John T. Mills,* for plaintiffs in error. The charge of the Court was most certainly illegal and erroneous. None but mathematical truth is susceptible of that high degree of evidence called demonstration. Matters of fact are proved by moral evidence alone. The true question therefore in trials

of fact is not whether it is possible that the testimony may be false, but whether there is a sufficient probability of its truth. Certainty to a common interest is all that is required in civil cases, to prove a fact ; "in *favorem vitæ*" more might be required.   In the language of the Judge in the case at bar, it then should be "*undoubted evidence* and conclusive proof.— These expletives and superlatives undoubtedly led the jury into the error, that something more than certainty to *a common intent* was necessary in the proof, to permit them to find Wofford a partner.   As to what is evidence and what is satisfactory *and what sufficient*, see 1 Greenleaf on Evidence ; see also 2nd.

This charge violates the provisions of the Act of Feb. 5th, 1853, Laws of Texas, Vol. 4.   "He shall not in any case, civil or criminal, charge or comment on the weight of the evidence." We expect to prove a partnership on the part of Wofford by parol testimony.   The Judge blasts our hopes by telling the jury " to be very guarded in receiving our testimony, for the " same is an oral admission, and the law books say they are " uncertain things ; and not only so, but that all parol testi- " mony is dubious and uncertain."   Was this not really telling the jury that our testimony was trivial and light ? in fact, did he not, as it were, weigh for the jury the evidence ?   Why caution the jury against "the parol admissions of Wofford," without telling them at the same time, that " where the admission (though parol) is deliberately made and precisely iden- tified, the evidence it affords, is often of the most satisfactory character ?  (1 Greenleaf Ev., Sec. 200.)   The admission of Wofford to witness Witty, that he was a partner of Hamill's at the time of the execution of the note in suit, was precisely identified and most deliberately made.   So was also the ad- mission to Blackwell, another witness.   That the jury were misled by this charge, is evident from their having rendered a verdict for defendant Wofford. . In his letter Wofford tells Hamill that he cannot meet him in Philadelphia, as agreed on

when they last met in Texas ; that he had been somewhat disappointed in his money matters ; tells him to lay out his funds for such goods as he may think proper ; suggests the propriety of buying fancy goods, such as were spoken of when I (Wofford) left you (Hamill) ; manifests great anxiety to hear from him ; gives his address for a time at Athens, Ala., and then New Orleans, then home in Texas. Is there any possible method of accounting for the interest which he manifests in this man Hamill, other than the fact that he told the truth when but a short time before that time he had told witnesses Blackwell and Witty, in Texas, that he was a partner of Hamill ? If a jury ever totally disregarded the evidence, they did so in this case. Their verdict is so palpably in opposition to the testimony, as only to be accounted for by yielding the point, that they were unduly influenced by the erroneous charge of the Court.

*A. Morrill* and *H. Dillahunty*, for defendant in error.   The statement of facts shows that the evidence is conflicting, and in such case this Court has uniformly refused to disturb the verdict, on the ground that it was contrary to evidence.— (Chevallier v. Brewer, 6 Tex. R. 398 ; Bachelor v. The State, 10 Id. 258.)   It is true that, if it appears to the Court, from the statement of facts, that the jury may have been misled by the charge of the Court, the judgment will be reversed ; but the charge may embrace erroneous propositions, yet it is not sufficient cause for the reversal of the judgment, when the effect of the error is removed by other portions of the charge ; and when, upon the whole, the charge given was not unfavorable to the party seeking reversal. (Mercer v. Hall, adm'rx, 2 Tex. R. 284.)

The charge was listened to attentively by the counsel for the plaintiffs in the Court below, and no objection was made, or probably thought of, until the jury rendered their verdict in favor of the defendant Wofford.   It is seen by reference to

the statement of facts, that there is no proof of the partnership, but the verbal admissions deposed to by the witness Witty, and this witness admits that he is unfriendly to Wofford, and it was in relation to the testimony of this witness, that the instructions were given. And what says the books about such evidence ? In 1 Greenleaf on Evidence, Sec. 200, it is said : "With respect to all verbal admissions, it may be observed, "they ought to be received with *great caution.* The evidence, "consisting as it does, in the mere repetition of oral state- "ments, is subject to much imperfection and mistake ; the party "himself either being misinformed, or not having clearly ex- "pressed his own meaning, or the witness having misunder- "stood him. It frequently happens also that the witness, by "unintentionally altering a few of the expressions really used, "gives an effect to the statement completely at variance with "what the party actually did say." And these remarks are corroborated by all the elementary writers on the law of evidence. We do not think that the District Judge went any farther in his instructions to the jury than the law warrants, and therefore believe the judgment will be affirmed.

The charge of the Court was not objected to when it was given ; it is now too late to object to it. (Thatcher v. Mills, 14 Tex. R. 16 ; Converse & Co. v. McKee, Id. 201.)

LIPSCOMB, J. This suit was brought against the defendants on the following promissory note, viz :

$2,351 85-100.                     PHILADELPHIA, Sept. 2nd, 1853.

Six months after date, the subscriber, resident in Elizabeth, County of Fannin, State of Texas, promises to pay to the order of McFarland, Evans & Co., twenty-three hundred and fifty-one dollars 85-100, without defalcation ; value received.

(Signed,)                     A. M. HAMILL.

The petition alleges, that at the time the note was given, John Wofford was a partner with Hamill, doing mercantile business with him, under the firm style of A. M. Hamill. Wof-

ford denies the existence of any kind of co-partnership at the time the debt was incurred and the note given by Hamill.— There was a verdict and judgment for the defendant, Wofford; motion for a new trial by the plaintiffs, which was overruled.

From the statement of facts, the evidence was far from clear and satisfactory in establishing the fact of the co-partnership, and is believed to preponderate in the negative of its existence.   The note, though peculiarly constructed, furnishes no presumption of a co-partnership with Wofford, or any other person.   We do not, therefore, feel authorized to say that the verdict of the jury was contrary to evidence, nor unsupported by evidence.   The language of the Court, in its charge to the jury on the certainty required in the evidence, to prove facts, is perhaps objectionable, dealing too often in superlatives ; but, taken altogether, is believed to be sufficiently qualified to avoid misleading the jury ; nor is it believed, from a reference to the facts, that they were misled.   The judgment is affirmed.

Judgment affirmed.