CASEY-SWASEY COMPANY v. D. J. ANDERSON ET AL.

Decided November 19, 1904.

**1.—Surety by Deed of Trust—Novation of Debt—Release.**

Defendant, joined by his mother, executed to plaintiffs a deed of trust upon a tract of land in which the mother owned a half interest, to secure payment of such sums as might become due to plaintiff by defendant for goods sold to him during the ensuing years of 1900 and 1901. In January, 1902, defendant, without the knowledge and consent of his mother, closed his account with plaintiffs by executing to them his note for a balance due them, the note bearing 10 percent interest, with stipulation for attorney fees, and giving a small extension of time. Plaintiffs sued upon this note, asking foreclosure of the deed of trust. Held, that such novation of the debt, imposing conditions more onerous than the original contract, operated to release from the deed of trust the interest of the mother, which stood as surety for defendant's debt.

**2.—Same—Security for Open Account—Recitals Construed.**

A recital in the deed of trust that it was executed to secure plaintiffs for any advances they might make to defendant upon open account or accounts as he, defendant, "may contract with them, as shown by their books," did not authorize a contract by note, nor was such contract impliedly authorized by the deed of trust when considered with reference to well known commercial usages and the purpose for which it was made.

**3.—Same—Suit on Note—Novation—Judgment on Account—Pleading.**

Plaintiffs having sued upon the note, and not upon the account either directly or in the alternative, were not entitled to judgment on the account with foreclosure of the deed of trust as against the interest of the mother which stood as surety for the account.

Appeal from the District Court of Navarro. Tried below before Hon. L. B. Cobb.

*Richard Mays* and *Orrick & Terrell,* for appellant.—1. The court erred in holding, that the taking of the note in evidence by plaintiff from D. J. Anderson, was a novation of the contract between plaintiff and Mrs. S. L. Anderson, and had the effect of releasing Mrs. Anderson's property from any liability to plaintiff, and was a waiver of its lien upon the property described in the deed of trust. The execution and delivery of the note in question was authorized by the terms of the guaranty contract executed by Mrs. S. L. Anderson to appellant, and especially so when considered with reference to well known commercial usages and in the light of the facts and circumstances surrounding its execution. Davis v. Wells, 104 U. S., 686; Wadsworth v. Allen, 56 Am. Dec., 137; Bush v. Critchfield, 5 Ohio, 109; Hooper v. Hooper, 48 Am. St. Rep., 500; Wilkins v. Carter, 84 Texas, 438; Louisville Mfg. Co. v. Welch, 10 Howard, 497; Meade v. McDowell, 5 Binn., 195; Case v. Howard, 41 Iowa, 479; Smith v. Dann, 6 Hill (N. Y.), 543; Curtis v. Hubbard, 50 Mass., 323; Korty v. McGill, 62 N. W. Rep., 1075; Looney v. LeGeirse, 2 W. & W., 531; Lawton v. Maner, 10 Rich. Law (S. C.), 523.

2. The execution of the note, being authorized by the terms of the guaranty, the fact that it was signed and delivered twenty-two days after the end of the year 1901, the purpose of its acceptance being merely

to close the open account and get it into liquidated form, and not to thereby extend and further credit, would not be a change of the guaranty in any material particular, and would not relieve Mrs. Anderson's property from liability. Louisville Mfg. Co. v. Welch, 10 How. (51 U. S.), 497; Wadsworth v. Allen, 56 Am. Dec., 137; Hooper v. Hooper, 48 Am. St. Rep., 500; Smith v. Dann, 6 Hill (N. Y.), 543; Korty v. McGill, 62 N. W. Rep., 1075.

3. At all events, under the guaranty contract, a lien existed upon the land in question to secure the amount due appellant upon open account for merchandise sold and money advanced, amounting to $3002.75, with 6 percent interest from January 1, 1902. Wadsworth v. Allen, 56 Am. Dec., 137; Putnam v. Lewis, 8 Johns, 389; Babcock v. Bryant, 29 Mass., 133; Curtis v. Hubbard, 50 Mass., 322; Lenox v. Murphy, 50 N. E. Rep., 644; Looney v. LeGeirse, 2 W. & W., sec. 534; 20 Am. & Eng. Ency. of Law, 959.

4. The court erred in holding that Mrs. Anderson's contract must be found alone in the instrument executed by her, and in the reference made therein. Brandt on Sur. and Guar., sec. 78; Smith v. Dann, 6 Hill (N. Y.), 543; Weiler v. Henarie, 15 Ore., 28.

*W. W. Ballew*, for appellees.—1. The court did not err in holding that the execution and delivery of a note by D. J. Anderson to the Casey-Swasey Co. extending the time of payment, promising to pay attorney fees with 10 percent interest on said note without the consent of Mrs. S. L. Anderson, had the effect to release the deed of trust, and to release the property from any claim that the Casey-Swasey Co. might have against it. Westbrook v. Belton National Bank, 8 Texas St. Rep., 913; Gardner v. Watson, 76 Texas, 25; Lane v. Scott, 57 Texas, 357; Ryan v. Morton, 65 Texas, 258.

TALBOT, ASSOCIATE JUSTICE.—The appellant sued on a promissory note, dated January 22, 1902, payable one day after its date, to recover of appellee D. J. Anderson $3002.75 with interest and attorneys' fees, and the foreclosure of a deed of trust against both the said D. J. Anderson and appellee S. L. Anderson. Appellee S. L. Anderson resisted the foreclosure of the deed of trust as to her on the ground, among other things not necessary to name, that since its execution the character of the debt, to secure which the deed was given, had been changed and the time of the payment thereof extended for a consideration, without her consent. The case was tried before the court without a jury and judgment rendered against appellee D. J. Anderson for the principal of said note and interest thereon at the rate of ten percent per annum from its date, together with 10 percent of the amount as attorneys' fees. The deed of trust was foreclosed as to the said D. J. Anderson, but foreclosure as to S. L. Anderson denied. Appellant excepted to the ruling of the court and has appealed.

The record discloses the following facts: S. L. Anderson was a widow and feme sole. D. J. Anderson is her son, and was engaged in the retail liquor business. He desired to purchase goods from appellant, but was indebted to another party, with whom he had been trading, in the sum

of $600. In order to pay this debt and transfer his account to appellant, he borrowed from appellant that amount of money, and he and his mother, S. L. Anderson, executed and delivered to appellant their four promissory notes in the sum of $150 each. To secure the payment of these notes and such other sums as might become due and owing to appellant by the said D. J. Anderson for goods sold and delivered to him during the years 1900 and 1901, on open account as shown by appellant's books, he executed and delivered to appellant a mortgage, about which there is no controversy, on fifty head of cattle; and subsequently, on the 17th day of March, 1900, he and his mother, S. L. Anderson, executed the deed of trust sought to be foreclosed, as additional security for said notes and account, on an undivided one-half of 320 acres of land in Navarro County, and some lots in the town of Richland, Texas. The provision of the deed of trust relating to the open account is as follows: "And it is further agreed and understood that this instrument is made and executed also for the purpose of securing the Casey-Swasey Company for any advances they may make or credits they may extend to the said D. J. Anderson upon open account or accounts as he, the said D. J. Anderson, may contract with them, during the years 1900 and 1901, as shown by their books." The deed of trust further provides that if the four notes mentioned are paid off, it shall not become void, but shall remain in full force to secure the amounts due the Casey-Swasey Company on said account or accounts. It contains the usual stipulations authorizing the sale of the property and application of the proceeds arising therefrom to the payment of the debts secured, in the event of default in the payment of the same. D. J. Anderson paid said four promissory notes, and during the years 1900 and 1901 bought of appellant goods of the value of $10,000 or more, and paid all except $3002.75, as shown by appellant's books. On January 22, 1902, when said account of $3002.75 was past due, D. J. Anderson closed the same by executing and delivering to appellant the note sued on. The note stipulated to pay interest at the rate of 10 percent per annum from its date, and in addition thereto, 10 percent of the amount of its principal sum and the interest, as attorneys' fees, if placed with an attorney for collection, or sued on. This note was made without the knowledge or consent of the appellee S. L. Anderson.

Several assignments of error with accompanying propositions have been presented by appellant, but it is deemed unnecessary to discuss them in detail. The controlling question arising upon the record is: Did the execution and delivery of the note sued on, closing up D. J. Anderson's account with appellant, extending the time of the payment thereof and providing for an increased rate of interest and the payment of attorneys' fees, have the effect to release and discharge the deed of trust sought to be foreclosed, as to Mrs. S. L. Anderson's interest in the land therein described? We think this question must be answered in the affirmative. Upon the execution and delivery of the deed of trust in question by Mrs. Anderson her interest in the property therein described became surety for D. J. Anderson's debt as provided by said deed of trust, and liable for its payment. The continuance of this re-

sponsibility for Anderson's debt, however, was dependent upon a strict adherence on appellant's part to the very terms of the contract made. Any binding agreement between appellant and the said D. J. Anderson, varying in an essential particular the original contract, would discharge Mrs. Anderson's property. The principle governing in the case of a personal surety seems to be applicable to cases of this character. Judge Stayton, in Ryan v. Morton, 65 Texas, 260, in which the rights of such surety were involved, said: "It is well settled that the liability of a surety can not be extended beyond the terms of the contract out of which his obligation arises. If the contract be altered without his consent, whether he sustains injury or the contract be to his advantage, it ceases to be his contract, and with that ceases his obligation."

Mrs. Anderson's property stood in the relation of surety for the payment of her son's indebtedness to appellant, although she had not become personally responsible for the same. That there was a material change in the contract between appellant and D. J. Anderson, there can be no question. The debt for the payment of which Mr. Anderson pledged her land was originally in the form of an open account. This account bore interest at the rate of 6 percent per annum, and there was no agreement to pay any amount as attorneys' fees. By the terms of the note sued on the time of payment was extended for four days, including the days of grace, the interest increased to 10 percent per annum and the additional promise made to pay 10 percent of the amount of the note and interest, as attorneys' fees, in the event the note was sued on, or placed in the hands of an attorney for collection. The promise to pay an increased rate of interest, etc., was sufficient consideration to support the agreement to extend the payment and make the new contract binding. Mrs. Anderson never assented to this contract. It is materially different from the one existing at the time the deed of trust was given. It enlarges the debt for which her property became surety and imposes an obligation not assumed by the terms of the original undertaking. She did not pledge her property as security for the performance of this contract by her son, and it can not be held bound therefor. Westbrook v. Belton Nat. Bank, 97 Texas, 246, 8 Texas Ct. Rep., 913; Ryan v. Morton, 65 Texas, 260; Gardner v. Watson, 76 Texas, 25; Lane v. Scott, 57 Texas, 367.

The contention of counsel for appellant in argument, that the execution by D. J. Anderson of the note sued on is expressly authorized by the terms of the deed of trust, is not supported, in our opinion, by the language of that instrument. The language relied upon, as we understand it, is as follows: "This instrument is made and executed also for the purpose of securing the Casey-Swasey Company for any advances they may make or credits they may extend the said D. J. Anderson upon open account or accounts, as he, the said D. J. Anderson, may contract with them, during the years 1900 and 1901, as shown by their books." The words, "as he, the said D. J. Anderson, may contract with them," refer unquestionably to "open account or accounts," as shown by appellant's books, and are an express limitation of the security to that character of debt. The language is not ambiguous and open to construction. It is an unequivocal restriction of the pledge of Mrs. Anderson's property

to the payment of advances made and credits extended to D. J. Anderson upon open account or accounts during the years 1900 and 1901, as shall be shown by its books; and no warrant, we think, can be found therein to justify the claim that D. J. Anderson was authorized without the consent of Mrs. Anderson to make any character of contract with regard to such advances and credits, without incurring a forfeiture of release of the security given by her.

Nor do we think the execution and delivery of the note in question, when considered with reference to well known commercial usages, and in the light of the facts and circumstances surrounding its execution, and the purposes for which it was made, was impliedly authorized by the terms of the deed of trust. As said, the language of the instrument is unambiguous. Nothing is left to intendment. The intention of the parties is made clear, and we know of no commercial usage or custom that would give a meaning to the language employed, other than its ordinary signification imports.

Appellant's third assignment of error is as follows: "The plaintiff's itemized account, as shown by its books, against D. J. Anderson for the sum of $3002.75, being in evidence, the court erred in not holding that the property of Mrs. Anderson was bound for its payment, and subjecting it to the payment of said amount." The contention, as we understand it, under this assignment, is that inasmuch as the account against D. J. Anderson, as shown by appellant's books, was proven to be correct and admitted in evidence, and the trial court found that the note sued on had not been accepted as a payment of said account, judgment should have been rendered on the account and the deed of trust foreclosed as to Mrs. Anderson, notwithstanding the novation of the contract.

The rule seems to be well established that when a debtor executes his note for an existing debt, the right of action upon the original consideration is suspended until the note becomes due, and if it is not paid at that time the creditor may elect to sue either upon the original account or indebtedness, or upon the note, provided the note was not accepted in payment of the preexisting debt. Otto v. Half & Bro., 89 Texas, 390, and authorities there cited. The application of this rule can not be made in the present case for the reason that the pleadings will not warrant it. Appellant elected to sue on the note and asked a foreclosure of the deed of trust upon the theory that the payment of the note was secured thereby. It is distinctly a suit on the note, and not on the account. Upon the coming in of Mrs. Anderson's answer, there was no amendment seeking to recover on the account, as was done in the case of Otto v. Half & Bro., supra, and no other proper judgment, in our opinion, than the one entered by the trial court could have been rendered. The judgment of the court below is therefore in all things affirmed.

*Affirmed.*